UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION
_____

BRANDON MAURICE HEMPHILL,

                    Plaintiff,                          Case No. 1:22-cv-578

v.                                                      Honorable Ray Kent

THOMAS LEBO et al.,

                    Defendants.

_____/

## OPINION

This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983. Plaintiff previously sought (ECF No. 2) and was granted leave to proceed *in forma pauperis* (ECF No. 4). Pursuant to 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure, Plaintiff consented to proceed in all matters in this action under the jurisdiction of a United States magistrate judge. (ECF No. 5.)

This case is presently before the Court for preliminary review under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), pursuant to 28 U.S.C. § 1915A(b) and 42 U.S.C. § 1997e(c). The Court is required to conduct this initial review prior to the service of the complaint. *See In re Prison Litigation Reform Act*, 105 F.3d 1131, 1131, 1134 (6th Cir. 1997); *McGore v. Wrigglesworth*, 114 F.3d 601, 604–05 (6th Cir. 1997). Service of the complaint on the named defendant(s) is of particular significance in defining a putative defendant's relationship to the proceedings.

"An individual or entity named as a defendant is not obliged to engage in litigation unless notified of the action, and brought under a court's authority, by formal process." *Murphy Bros. v.*

*Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 347 (1999). "Service of process, under longstanding tradition in our system of justice, is fundamental to any procedural imposition on a named defendant." *Id.* at 350. "[O]ne becomes a party officially, and is required to take action in that capacity, only upon service of a summons or other authority-asserting measure stating the time within which the party served must appear and defend." *Id.* (citations omitted). That is, "[u]nless a named defendant agrees to waive service, the summons continues to function as the *sine qua non* directing an individual or entity to participate in a civil action or forgo procedural or substantive rights." *Id.* at 351. Therefore, the PLRA, by requiring courts to review and even resolve a plaintiff's claims before service, creates a circumstance where there may only be one party to the proceeding—the plaintiff—at the district court level and on appeal. *See, e.g.*, *Conway v. Fayette Cnty. Gov't*, 212 F. App'x 418 (6th Cir. 2007) (stating that "[p]ursuant to 28 U.S.C. § 1915A, the district court screened the complaint and dismissed it without prejudice before service was made upon any of the defendants . . . [such that] . . . only [the plaintiff] [wa]s a party to this appeal").

Here, Plaintiff has consented to a United States magistrate judge conducting all proceedings in this case under 28 U.S.C. § 636(c). That statute provides that "[u]pon the consent of the parties, a full-time United States magistrate judge . . . may conduct any or all proceedings . . . and order the entry of judgment in the case . . . ." 28 U.S.C. § 636(c). Because the named Defendants have not yet been served, the undersigned concludes that they are not presently parties whose consent is required to permit the undersigned to conduct a preliminary review under the PLRA, in the same way that they are not parties who will be served with or given notice of this opinion. *See Neals v. Norwood*, 59 F.3d 530, 532 (5th Cir. 1995) ("The record does not contain a

consent from the defendants[; h]owever, because they had not been served, they were not parties to the action at the time the magistrate entered judgment.").[1]

Under the PLRA, the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Plaintiff's amended complaint[2] for failure to state a claim against Defendants Clark and Dine. The Court will also dismiss, for failure to state a claim, the following claims against remaining Defendants Lebo, Ward, and Howard: Plaintiff's official capacity claims, Eighth Amendment claims, and RLUIPA claims. Further, the Court will dismiss Plaintiff's First Amendment retaliation claim against Defendant Ward premised on Defendant Ward's "constant threats." Plaintiff's First Amendment free exercise claims against Defendants Lebo, Ward, and Howard will remain in the case. Additionally, Plaintiff's First Amendment

---

[1] *But see Coleman v. Lab. & Indus. Rev. Comm'n of Wis.*, 860 F.3d 461, 471 (7th Cir. 2017) (concluding that, when determining which parties are required to consent to proceed before a United States magistrate judge under 28 U.S.C. § 636(c), "context matters" and the context the United States Supreme Court considered in *Murphy Bros.* was nothing like the context of a screening dismissal pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c)); *Williams v. King*, 875 F.3d 500, 503–04 (9th Cir. 2017) (relying on Black's Law Dictionary for the definition of "parties" and not addressing *Murphy Bros.*); *Burton v. Schamp*, 25 F.4th 198, 207 n.26 (3d Cir. 2022) (premising its discussion of "the term 'parties' solely in relation to its meaning in Section 636(c)(1), and . . . not tak[ing] an opinion on the meaning of 'parties' in other contexts").

[2] Plaintiff filed his amended complaint on July 28, 2022. (ECF No. 6.) The Federal Rules of Civil Procedure provide that a party may amend its pleading once as a matter of course within 21 days after service of the complaint. *See* Fed. R. Civ. P. 15(a)(1). Because Defendants have not yet been served, Plaintiff was entitled to amend his complaint as of right. Plaintiff's amended complaint (ECF No. 6) therefore is the operative pleading in this matter.

retaliation claims against Defendant Ward premised on (i) the issuance of a misconduct report for cooking chicken and (ii) the loss of his prison work assignment will remain in the case.

**Discussion**

## I.      Factual Allegations

Plaintiff is presently incarcerated with the Michigan Department of Corrections (MDOC) at the Muskegon Correctional Facility (MCF) in Muskegon, Muskegon County, Michigan. The events about which he complains, however, occurred at the Carson City Correctional Facility (DRF) in Carson City, Montcalm County, Michigan. Plaintiff sues the following DRF food service employees: Food Service Director Thomas Lebo, Assistant Food Service Director Cindy Clark, Food Service #9 Workers Christopher Warden and Tracy Howard; and Food Service Business Manager Donald Dine. (Am. Compl., ECF No. 6, PageID.67–68.) Plaintiff indicates that he is suing Defendants Lebo, Ward, and Howard in their individual and official capacities. (*Id.*) Plaintiff does not indicate in which capacity, or capacities, that he is suing Defendants Clark and Dine. (*See id.*)

In Plaintiff's amended complaint, he alleges that in February of 2018, he was "approved and recognized to eat from the [MDOC's] . . . Vegan/Religious meal line."[3] (*Id.*, PageID.68.) Plaintiff contends that the "MDOC vegan/religious meals requires that all vegan/religious meals be prepared in accordance with the practice and procedures to ensure no cross-contamination and to ensure vegan/religious meal tenets are upheld." (*Id.*) On April 8, 2020, Defendant Lebo instructed Plaintiff "to cook and prepare vegan/religious meals outside established and designated area[s]." (*Id.*, PageID.69.) Plaintiff advised Defendant Howard of the risk of cross-contamination,

---

[3] In this opinion, the Court corrects the spelling, punctuation, and capitalization in quotations from Plaintiff's amended complaint.

4

and Defendant Howard "acknowledged the risk" and told Plaintiff she would raise the concerns to Defendant Lebo. (*Id.*) Subsequently, Defendant Lebo told Plaintiff "It's only 8 days, deal with it!" (*Id.*) Defendant Howard stated, "It has never been done like this and shouldn't be, why now!" (*Id.*) Defendant Lebo replied, "Because I'm the boss that's why!" (*Id.*) Plaintiff states that because the religious meals were prepared outside of the designated area, Plaintiff had "to either eat meals that were in violation of [his] religious tenets, or go without eating." (*Id.*)

On May 4, 2020, "chicken was found cooked in the vegan/religious kitchen and no decontamination was done to cure the incident." (*Id.*) Thereafter, "Plaintiff returned as [a] vegan cook after being exonerated of alleged misconduct of cooking chicken in [the] vegan/religious kitchen" by Defendant Ward. (*Id.*) Plaintiff states that he filed a grievance after there were multiple occasions of "cross-contamination of the vegan/religious meals." (*Id.*, PageID.70.)

On May 27, 2020, Plaintiff "signed off as [a] food service vegan/religious cook after constant threats" by Defendant Ward "to sign off grievances of cross-contamination." (*Id.*) Subsequently, on October 20, 2020, Plaintiff returned to the MDOC food service. (*Id.*) Upon Plaintiff's return, Defendant Ward stated, "Why don't you stay gone, you're making my life a living hell you f[******] snitch!" (*Id.*) On December 4, 2020, Defendant Ward "filed a false csj-126 form and removed [Plaintiff] from food service work detail." (*Id.*)

Thereafter, "after the MDOC began prisoner separated jobs according to units due to COVID-19," Defendant Ward removed Plaintiff "from [a] high paying job position" on February 25, 2021. (*Id.*) Plaintiff contends that on February 26, 2021, Defendant Howard told Plaintiff that Defendant Ward "could not remove Plaintiff from work detail for no reason." (*Id.*)

On March 26, 2021, through April 5, 2021, "vegan/religious meals were prepared outside the well-established designated area for a consecutive year." (*Id.*) Plaintiff claims that Defendant

Howard "ordered that religious materials be cleaned with materials that ha[d] been strictly established to be prohibited under any circumstances." (*Id.*, PageID.71) On April 6, 2021, Plaintiff filed a grievance "due to [the] reoccurrence of vegan/religious meals being prepared in [an] area outside [the] well-established strict vegan/religious kitchen." (*Id.*)

On April 13, 2021, Plaintiff's religious "Ramadan began, [and] due to contamination of religious equipment, the meals were not religiously adequate and Plaintiff was forced to not eat, or eat meals in violation of religious beliefs." (*Id.*) On April 16, 2021, Plaintiff brought the "Ramadan religious shortages" to the attention of Defendants Lebo, Clark, and Ward. (*Id.*) Plaintiff was told "we will get it right next year." (*Id.*)

On April 23, 2021, Plaintiff was interviewed by Defendant Lebo regarding Plaintiff's grievance about cross-contamination. (*Id.*) Defendant Lebo stated, "In the future, separate wash bins will be purchased to clean, rinse, and sanitize tools for the vegan/religious kitchen and hot water will also be turned on in the area where tools will be cleaned." (*Id.*)

Plaintiff states that "[u]pon information and belief, Plaintiff continued to complain for 688 days" regarding the "significant incidents of contamination" "until Plaintiff was transferred from Carson City [on] March 3, 2022." (*Id.*) Plaintiff contends that during this period of time, the DRF religious meals "were never able to survive nor sustain the practices and procedures related to religious tenets." (*Id.*)

Based on the foregoing allegations, Plaintiff avers that Defendants violated his rights under the First and Eighth Amendments, as well as under the Religious Land Use and Institutionalized Persons Act (RLUIPA), 42 U.S.C. § 2000cc-1(a). (*See, e.g., id.*, PageID.67, 72–74.) As relief, Plaintiff seeks compensatory and punitive damages, as well as injunctive and declaratory relief. (*Id.*, PageID.74–76.)

## II.     Failure to State a Claim

A complaint may be dismissed for failure to state a claim if it fails "to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Id.*; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(ii)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to

identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

### A.      Defendants Clark & Dine

Plaintiff alleges that Defendant Clark, "as the assistant food service director," and Defendant Dine, "as the "food service business manager," ensure "that all standards are held in accordance to the practices, policies, and procedures regarding matters of food service." (Am. Compl., ECF No. 6, PageID.67–68.) Plaintiff alleges that on April 16, 2021, he brought the "Ramadan religious shortages" to the attention of Defendants Lebo, Clark, and Ward, and Plaintiff was told "we will get it right next year." (*Id.*, PageID.71.) Plaintiff also alleges in a conclusory manner that Defendants Clark and Dine, as well as Defendants Lebo, Ward, and Howard, "caused Plaintiff during the religious Ramadan to not eat or eat meals in violation of religious tenets." (*Id.*, PageID.73.) Plaintiff fails to allege any *facts* indicating that Defendants Clark and Dine had any personal involvement in causing Plaintiff either to not eat or "eat meals in violation of religious tenets" during Ramadan. (*See id.*)

It is a basic pleading essential that a plaintiff attribute factual allegations to particular defendants. *See Twombly*, 550 U.S. at 555–61 (holding that, in order to state a claim, a plaintiff must make sufficient allegations to give a defendant fair notice of the claim). Where a person is named as a defendant without an allegation of specific conduct, the complaint is subject to dismissal, even under the liberal construction afforded to *pro se* complaints. *See Gilmore v. Corr. Corp. of Am.*, 92 F. App'x 188, 190 (6th Cir. 2004) (dismissing complaint where plaintiff failed to allege how any named defendant was involved in the violation of his rights); *Frazier v. Michigan*, 41 F. App'x 762, 764 (6th Cir. 2002) (dismissing plaintiff's claims where the complaint did not allege with any degree of specificity which of the named defendants were personally involved in or responsible for each alleged violation of rights).

Moreover, to the extent that Plaintiff seeks to hold Defendants Clark and Dine liable for the actions of their subordinates, government officials, such as Defendants Clark and Dine, may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior or vicarious liability. *Iqbal*, 556 U.S. at 676; *Monell v. New York City Dep't of Soc. Servs*., 436 U.S. 658, 691(1978); *Everson v. Leis*, 556 F.3d 484, 495 (6th Cir. 2009). A claimed constitutional violation must be based upon active unconstitutional behavior. *Grinter v. Knight*, 532 F.3d 567, 575–76 (6th Cir. 2008); *Greene v. Barber*, 310 F.3d 889, 899 (6th Cir. 2002). The acts of one's subordinates are not enough, nor can supervisory liability be based upon the mere failure to act. *Grinter*, 532 F.3d at 576; *Greene*, 310 F.3d at 899; *Summers v. Leis*, 368 F.3d 881, 888 (6th Cir. 2004). "[A] plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676.

The United States Court of Appeals for the Sixth Circuit repeatedly has summarized the minimum required to constitute active conduct by a supervisory official:

> "[A] supervisory official's failure to supervise, control or train the offending individual is not actionable *unless* the supervisor either encouraged the specific incident of misconduct or in some other way directly participated in it." *Shehee*, 199 F.3d at 300 (emphasis added) (internal quotation marks omitted). We have interpreted this standard to mean that "at a minimum," the plaintiff must show that the defendant "at least implicitly authorized, approved, or knowingly acquiesced in the unconstitutional conduct of the offending officers."

*Peatross v. City of Memphis*, 818 F.3d 233, 242 (6th Cir. 2016) (quoting *Shehee*, 199 F.3d at 300); *see also Copeland v. Machulis*, 57 F.3d 476, 481 (6th Cir. 1995)); *Walton v. City of Southfield*, 995 F.2d 1331, 1340 (6th Cir. 1993).

Here, Plaintiff fails to allege any *facts* showing that Defendants Clark and Dine encouraged or condoned the conduct of their subordinates, or authorized, approved, or knowingly acquiesced in the conduct. Plaintiff's vague and conclusory allegations of supervisory responsibility are

insufficient to demonstrate that Defendants Clark and Dine were personally involved in the alleged violations of Plaintiff's constitutional rights. Because Plaintiff has failed to allege that Defendants Clark and Dine engaged in any active unconstitutional behavior, Plaintiff fails to state a claim against them.

### B.     Official Capacity Claims Against Remaining Defendants

Plaintiff indicates that he is suing the remaining Defendants—Defendants Lebo, Ward, and Howard—in their individual and official capacities. (Am. Compl., ECF No. 6, PageID.67–68.)

A suit against an individual in his or her official capacity is equivalent to a suit against the governmental entity; in this case, the MDOC. *See Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989); *Matthews v. Jones*, 35 F.3d 1046, 1049 (6th Cir. 1994). The states and their departments are immune under the Eleventh Amendment from suit in the federal courts, unless the state has waived immunity or Congress has expressly abrogated Eleventh Amendment immunity by statute. *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 98–101 (1984); *Alabama v. Pugh*, 438 U.S. 781, 782 (1978); *O'Hara v. Wigginton*, 24 F.3d 823, 826 (6th Cir. 1994). Congress has not expressly abrogated Eleventh Amendment immunity by statute, *Quern v. Jordan*, 440 U.S. 332, 341 (1979), and the State of Michigan has not consented to civil rights suits in federal court. *Abick v. Michigan*, 803 F.2d 874, 877 (6th Cir. 1986). In numerous opinions, the Sixth Circuit has specifically held that the MDOC is absolutely immune from a § 1983 suit under the Eleventh Amendment. *See, e.g.*, *Harrison v. Michigan*, 722 F.3d 768, 771 (6th Cir. 2013); *Diaz v. Mich. Dep't of Corr.*, 703 F.3d 956, 962 (6th Cir. 2013); *McCoy v. Michigan*, 369 F. App'x 646, 653–54 (6th Cir. 2010).

Here, Plaintiff seeks monetary damages, as well as declaratory and injunctive relief. An official capacity defendant is absolutely immune from monetary damages. *See Will*, 491 U.S. at 71; *Turker v. Ohio Dep't of Rehab. & Corr.*, 157 F.3d 453, 456 (6th Cir. 1998). The Court, therefore,

will dismiss Plaintiff's claims for monetary damages against Defendants Lebo, Ward, and Howard in their official capacities.

Although damages claims against official capacity defendants are properly dismissed, an official capacity action seeking injunctive relief constitutes an exception to sovereign immunity. *See Ex Parte Young*, 209 U.S. 123, 159–60 (1908) (holding that the Eleventh Amendment immunity does not bar prospective injunctive relief against a state official). The United States Supreme Court has determined that a suit under *Ex Parte Young* for prospective injunctive relief should not be treated as an action against the state. *Kentucky v. Graham*, 473 U.S. 159, 167 n.14 (1985). Instead, the doctrine is a fiction recognizing that unconstitutional acts cannot have been authorized by the state and therefore cannot be considered done under the state's authority. *Id.*

Nonetheless, the Supreme Court has cautioned that, "*Ex parte Young* can only be used to avoid a state's sovereign immunity when a 'complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective.'" *Ladd v. Marchbanks*, 971 F.3d 574, 581 (6th Cir. 2020) (quoting *Verizon Md. v. Pub. Serv. Comm'n of Md.*, 535 U.S. 635, 645 (2002)). Here, Plaintiff is no longer confined at DRF, which is where he avers that Defendants Lebo, Ward, and Howard are employed. The Sixth Circuit has held that transfer to another correctional facility moots a prisoner's injunctive and declaratory claims. *See Kensu v. Haigh*, 87 F.3d 172, 175 (6th Cir. 1996) (holding that a prisoner-plaintiff's claims for injunctive and declaratory relief became moot when the prisoner was transferred from the prison about which he complained); *Mowatt v. Brown*, No. 89-1955, 1990 WL 59896 (6th Cir. May 9, 1990); *Tate v. Brown*, No. 89-1944, 1990 WL 58403 (6th Cir. May 3, 1990); *Williams v. Ellington*, 936 F.2d 881 (6th Cir. 1991). Underlying this rule is the premise that such relief is appropriate only where plaintiff can show a reasonable expectation or demonstrated probability that he is in immediate danger of sustaining

direct future injury as the *result* of the challenged official conduct. *Los Angeles v. Lyons*, 461 U.S. 95, 102 (1983). Past exposure to an isolated incident of illegal conduct does not, by itself, sufficiently prove that the plaintiff will be subjected to the illegal conduct again. *See, e.g.*, *id.*; *Alvarez v. City of Chicago*, 649 F. Supp. 43 (N.D. Ill. 1986); *Bruscino v. Carlson*, 654 F. Supp. 609, 614, 618 (S.D. Ill. 1987), *aff'd*, 854 F.2d 162 (7th Cir. 1988); *O'Shea v. Littleton*, 414 U.S. 488, 495–96 (1974).

Plaintiff is now incarcerated at MCF, and Defendants Lebo, Ward, and Howard are not employed at that correctional facility. Therefore, Plaintiff cannot maintain his claims for injunctive and declaratory relief against Defendants Lebo, Ward, and Howard, and the Court will dismiss these claims.[4]

In summary, Plaintiff's claims against Defendants Lebo, Ward, and Howard in their official capacities will be dismissed.

## C.      Eighth Amendment Claims

Plaintiff alleges that Defendants Lebo, Ward, and Howard violated his rights under the Eighth Amendment. (*See* Am. Compl., ECF No. 6, PageID.72–74.)

The Eighth Amendment prohibits the infliction of cruel and unusual punishment against those convicted of crimes. U.S. Const. amend. VIII. Punishment may not be "barbarous" nor may it contravene society's "evolving standards of decency." *Rhodes v. Chapman*, 452 U.S. 337, 345–46 (1981). The Amendment, therefore, prohibits conduct by prison officials that involves the "unnecessary and wanton infliction of pain." *Ivey v. Wilson*, 832 F.2d 950, 954 (6th Cir. 1987)

---

[4] As part of his request for injunctive relief, Plaintiff requests that "[i]f Plaintiff return[s] to Carson City Correctional Facility, and the conditions have not been met, that have been complained of in this complaint, Plaintiff shall be awarded $500 per diem." (Am. Compl., ECF No. 6, PageID.74.) However, based on the facts alleged by Plaintiff, whether Plaintiff may be transferred back to DRF is too speculative to justify relief. *See Kensu*, 87 F.3d at 175.

(per curiam) (quoting *Rhodes*, 452 U.S. at 346). The deprivation alleged must result in the denial of the "minimal civilized measure of life's necessities." *Rhodes*, 452 U.S. at 347; *see also Wilson v. Yaklich*, 148 F.3d 596, 600–01 (6th Cir. 1998). The Eighth Amendment is only concerned with "deprivations of essential food, medical care, or sanitation" or "other conditions intolerable for prison confinement." *Rhodes*, 452 U.S. at 348 (citation omitted). Moreover, "[n]ot every unpleasant experience a prisoner might endure while incarcerated constitutes cruel and unusual punishment within the meaning of the Eighth Amendment." *Ivey*, 832 F.2d at 954. "Routine discomfort is 'part of the penalty that criminal offenders pay for their offenses against society.'" *Hudson v. McMillian*, 503 U.S. 1, 9 (1992) (quoting *Rhodes*, 452 U.S. at 347). As a consequence, "extreme deprivations are required to make out a conditions-of-confinement claim." *Id.*

In order for a prisoner to prevail on an Eighth Amendment claim, the prisoner must show that he faced a sufficiently serious risk to his health or safety and that defendants acted with "'deliberate indifference' to inmate health or safety." *Mingus v. Butler*, 591 F.3d 474, 479–80 (6th Cir. 2010) (citing *Farmer*, 511 U.S. at 834); *see also Helling v. McKinney*, 509 U.S. 25, 35 (1993) (applying deliberate indifference standard to conditions of confinement claims). The deliberate-indifference standard includes both objective and subjective components. *Farmer*, 511 U.S. at 834; *Helling*, 509 U.S. at 35–37. To satisfy the objective prong, an inmate must show "that he is incarcerated under conditions posing a substantial risk of serious harm." *Farmer*, 511 U.S. at 834. Under the subjective prong, an official must "know[] of and disregard[] an excessive risk to inmate health or safety." *Id.* at 837. "[P]rison officials who actually knew of a substantial risk to inmate health or safety may be found free from liability if they responded reasonably to the risk, even if the harm ultimately was not averted." *Id.* at 844.

Here, Plaintiff alleges in a conclusory manner that Defendants Lebo, Ward, and Howard violated his Eighth Amendment rights by "wantonly, reckless and maliciously" allowing cross-contamination in the "vegan/religious kitchen," which resulted in Plaintiff having to choose between not eating or eating meals in "violation of religious tenets." (*See* Am. Compl., ECF No. 6, PageID.72–74.) Plaintiff does not indicate which of these options he chose.

"[I]t is clearly established that the prison must provide adequate nutrition to prisoners," and that a failure to do so is an Eighth Amendment violation." *Welch v. Spaulding*, 627 F. App'x 479, 484 (6th Cir. 2015). As an initial matter, Plaintiff does not allege that the meals offered to him were nutritionally inadequate. Further, although Plaintiff alleges that during Ramadan, he had to choose between not eating or eating meals in "violation of religious tenets," because Plaintiff does not indicate which of these options he chose, Plaintiff's complaint necessarily contains no allegations suggesting that he in fact ate nutritionally inadequate meals. Under these circumstances, the factual allegations in Plaintiff's complaint are simply too scarce to show deliberate indifference. In short, Plaintiff appears to ask the Court to fabricate plausibility to his claims from mere ambiguity; however, ambiguity does not support a claim, factual allegations do. Accordingly, the Court will dismiss Plaintiff's Eighth Amendment claims against Defendants Lebo, Ward, and Howard.

### D.     First Amendment Retaliation Claims

Plaintiff alleges that Defendant Ward violated his First Amendment rights by retaliating against him. (*See* Am. Compl., ECF No. 6, PageID.72, 74.)

Retaliation based upon a prisoner's exercise of his or her constitutional rights violates the Constitution. *See Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc). In order to set forth a First Amendment retaliation claim, a plaintiff must establish three elements: (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a

person of ordinary firmness from engaging in that conduct; and (3) the adverse action was
motivated, at least in part, by the protected conduct. *Id.* Moreover, a plaintiff must be able to show
that the exercise of the protected right was a substantial or motivating factor in the defendant's
alleged retaliatory conduct. *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (citing
*Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).

### 1. Protected Conduct

With respect to the first element of a First Amendment retaliation claim, an inmate has a
right to file "non-frivolous" grievances against prison officials on his own behalf, whether written
or oral. *Maben v. Thelen*, 887 F.3d 252, 265 (6th Cir. 2018); *Mack v. Warden Loretto FCI*, 839
F.3d 286, 298–99 (3d Cir. 2016) ("[The prisoner's] oral grievance to [the prison officer] regarding
the anti-Muslim harassment he endured at work constitutes protected activity under the First
Amendment."); *Pearson v. Welborn*, 471 F.3d 732, 741 (7th Cir. 2006) ("[W]e decline to hold that
legitimate complaints lose their protected status simply because they are spoken."); *see also Pasley
v. Conerly*, 345 F. App'x 981, 984–85 (6th Cir. 2009) (finding that a prisoner engaged in protected
conduct by *threatening* to file a grievance). "Nothing in the First Amendment itself suggests that
the right to petition for redress of grievances only attaches when the petitioning takes a specific
form." *Holzemer v. City of Memphis*, 621 F.3d 512, 521 (6th Cir. 2010) (quoting *Pearson*, 471
F.3d at 741) (finding that a conversation constituted protected petitioning activity).

Here, Plaintiff references complaining verbally to Defendant Howard regarding the
"contamination risk." (Am. Compl., ECF No. 1, PageID.68.) Plaintiff claims that Defendant
Howard "acknowledged the risk" and told Plaintiff she would raise the concerns to Defendant
Lebo. (*Id.*) Additionally, Plaintiff references filing grievances regarding the cross-contamination
that occurred with the "vegan/religious meals." (*See id.*, PageID.70–71.) Therefore, at this stage

of the proceedings, Plaintiff has alleged sufficient facts to suggest that he was engaged in protected conduct for purposes of his First Amendment claim.

### 2.      Adverse Action

To establish the second element of a retaliation claim, a prisoner-plaintiff must show adverse action by a prison official sufficient to deter a person of ordinary firmness from exercising his constitutional rights. *Thaddeus-X*, 175 F.3d at 396. The adverseness inquiry is an objective one and does not depend on how a particular plaintiff reacted. The relevant question is whether the defendant's conduct is "*capable* of deterring a person of ordinary firmness"; the plaintiff need not show actual deterrence. *Bell*, 308 F.3d at 606 (6th Cir. 2002).

In this action, Plaintiff indicates that Defendant Ward issued him a misconduct ticket for allegedly "cooking chicken in [the] vegan/religious kitchen." (Am. Compl., ECF No. 6, PageID.69; *see* Misconduct Report, ECF No. 6-3, PageID.93.) Additionally, Plaintiff states that Defendant Ward filed a "false" work evaluation form and removed Plaintiff "from food service work detail." (Am. Compl., ECF No. 6, PageID.70.) Plaintiff also vaguely references "constant threats" by Defendant Ward "to sign off grievances [on] cross-contamination." (*Id.*)

### a.      Misconduct Charge & Loss of Work Assignment

The issuance of a misconduct charge can be considered an adverse action. *See Thomas v. Eby*, 481 F.3d 434, 441 (6th Cir. 2007) (discussing that the issuance of a misconduct ticket can "constitute[] an adverse action"); *see also Hill*, 630 F3d at 474 (holding that "actions that result in more restrictions and fewer privileges for prisoners are considered adverse"); *Scott v. Churchill*, 377 F.3d 565, 572 (6th Cir. 2004) ("[T]he mere potential threat of disciplinary sanctions is sufficiently adverse action to support a claim of retaliation."). Further, "the loss of a prison job can in some circumstances be deemed an adverse action for purposes of a retaliation claim." *Bradley v. Conarty*, No. 17-2340, 2018 WL 5883929, at *2 (6th Cir. Sept. 13, 2018) (collecting cases).

Therefore, both the issuance of a misconduct ticket and Plaintiff's loss of his prison work assignment constitute adverse action.

### b.      Verbal Threats

With respect to verbal threats, a specific threat of harm may satisfy the adverse-action requirement if it would deter a person of ordinary firmness from exercising his or her First Amendment rights, *see, e.g., Thaddeus-X*, 175 F.3d at 396, 398 (threat of physical harm); *Smith v. Yarrow*, 78 F. App'x 529, 542 (6th Cir. 2003) (threat to change drug test results). However, certain threats or deprivations are so vague or *de minimis* that they do not rise to the level of being constitutional violations. *Thaddeus-X*, 175 F.3d at 398; *Smith*, 78 F. App'x at 542.

The Court concludes that Plaintiff's vague assertion that Defendant Ward made "constant threats" would not deter a person of ordinary firmness from exercising his or her First Amendment rights. (Am. Compl., ECF No. 6, PageID.70); *see, e.g.*, *Hardy v. Adams*, No. 16-2055, 2018 WL 3559190, at *3 (6th Cir. Apr. 13, 2018) ("The alleged threat by Adams that she would make Hardy's life 'hell' is simply too vague to pass this threshold."); *Yates v. Rogers*, No. 2:18-cv-180, 2018 WL 6629366, at *7 (W.D. Mich. Dec. 19, 2018) ("Defendant's vague threat to 'get' Plaintiff does not carry the same seriousness . . . ."); *Johnson v. Govern*, No. 2:17-cv-125, 2018 WL 6321548, at *2 (W.D. Mich. Dec. 4, 2018) ("Govern's alleged threat to 'put a case' on Johnson . . . was too vague to constitute adverse action."). Accordingly, Plaintiff's retaliation claim premised on Defendant Ward's "constant threats" will be dismissed.

### 3.      Retaliatory Motive

To satisfy the third element of a retaliation claim, Plaintiff must allege facts that support an inference that the alleged adverse action was motivated by the protected conduct. In this action, Plaintiff's allegations suggest that on two occasions, shortly after complaining either verbally or in written grievances about the risk of cross-contamination when preparing the "vegan/religious

meals," Defendant Ward took adverse actions against Plaintiff. Although Plaintiff has by no means proven retaliation, taking Plaintiff's allegations as true and in the light most favorable to him, the Court may not dismiss on initial review Plaintiff's First Amendment retaliation claims against Defendant Ward premised on (i) the issuance of a misconduct report for cooking chicken and (ii) the loss of his prison work assignment.

### E.     First Amendment Religious Exercise & RLUIPA Claims

The First Amendment provides "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof . . . ." U.S. Const. amend I. The right to freely exercise one's religion falls within the fundamental concept of liberty under the Fourteenth Amendment. *Cantwell v. Connecticut*, 310 U.S. 296, 303 (1940). Accordingly, state legislatures and those acting on behalf of a state are "as incompetent as Congress" to interfere with the right. *Id.* While "lawful incarceration brings about the necessary withdrawal or limitation of many privileges and rights," inmates clearly retain the First Amendment protection to freely exercise their religion. *See O'Lone v. Shabazz*, 482 U.S. 342, 348 (1987) (citations omitted). To establish that this right has been violated, Plaintiff must establish that: (1) the belief or practice he seeks to protect is religious within his own "scheme of things," (2) that his belief is sincerely held, and (3) Defendants' behavior infringes upon this practice or belief. *Kent v. Johnson*, 821 F.2d 1220, 1224–25 (6th Cir. 1987); *see also Flagner v. Wilkinson*, 241 F.3d 475, 481 (6th Cir. 2001) (same); *Bakr v. Johnson*, No. 95-2348, 1997 WL 428903, at *2 (6th Cir. July 30, 1997) (noting that "sincerely held religious beliefs require accommodation by prison officials").

Plaintiff does not specifically identify his religion; however, at this stage of the proceedings, the Court assumes, without deciding, that Plaintiff has sufficiently alleged his sincerely held religious beliefs and there is no doubt that the practice of following a vegan diet at all times, as well as during Ramadan, is a religious practice. The next consideration is "whether

18

the challenged practice of the prison officials infringes on the religious belief . . . ." *Kent*, 821 F.2d at 1224–25. A practice will not be considered to infringe on a prisoner's free exercise unless it "places[s] a substantial burden on the observation of a central religious belief or practice . . . ." *Hernandez v. C.I.R.*, 490 U.S. 680, 699 (1989); *see also Welch v. Spaulding*, 627 F. App'x 479, 485 (6th Cir. 2015) (McKeague, J., dissenting) ("To violate the First Amendment, the diet must impose a substantial burden on the inmate's exercise of religion.").

"[T]he Supreme Court has made clear that the 'substantial burden' hurdle is high." *Living Water Church of God v. Charter Twp. Of Meridian*, 258 F. App'x 729, 734 (6th Cir. 2007). "[A] 'substantial burden' is a difficult threshold to cross." *Id.* at 736. "[A] 'substantial burden' must place more than an inconvenience on religious exercise." *Id.* at 739 (quoting *Midrash Sephardi, Inc. v. Town of Surfside*, 366 F.3d 1214, 1227 (11th Cir. 2004)). A particular government action will not be considered a substantial burden merely because it "may make [the] religious exercise more expensive or difficult . . . ." *Id.*

The analysis of Plaintiff's RLUIPA claim parallels the analysis of his free exercise claim. In relevant part, RLUIPA prohibits any government from imposing a "substantial burden on the religious exercise" of a prisoner, unless such burden constitutes the least restrictive means of furthering a compelling governmental interest. 42 U.S.C. § 2000cc-1(a). The term "religious exercise" "includes any exercise of religion, whether or not compelled by, or central to, a system of religious belief." 42 U.S.C. § 2000cc-5(7).

The phrase "substantial burden" is not defined in RLUIPA. The Sixth Circuit Court of Appeals has relied upon the Act's legislative history to conclude that the term has the same meaning under RLUIPA as provided by the Supreme Court in its "free exercise" decisions. *Living Water*, 258 F. App'x at 733–34. Accordingly, a burden is substantial where it forces an individual

to choose between the tenets of his religion and foregoing governmental benefits or places "substantial pressure on an adherent to modify his behavior and to violate his beliefs." *Id.* (citations omitted); *Cutter v. Wilkinson,* 544 U.S. 709, 720 (2005) (recognizing that RLUIPA's institutionalized persons provision was intended to alleviate only "exceptional" burdens on religious exercise); *Marshall v. Frank*, 2007 WL 1556872, at *5 (W.D. Wis. May 24, 2007) (discussing that a substantial burden is one which renders religious exercise "effectively impracticable" (quoting *Civil Liberties for Urban Believers v. City of Chicago*, 342 F.3d 752, 761 (7th Cir. 2003))). A burden is less than "substantial" where it imposes merely an "inconvenience on religious exercise," *see, e.g.*, *Konikov v. Orange County, Florida*, 410 F.3d 1317, 1323 (11th Cir. 2005), or does not "pressure the individual to violate his or her religious beliefs." *Living Water*, 258 F. App'x at 734. Such conclusions recognize that RLUIPA was not intended to create a cause of action in response to every decision which serves to inhibit or constrain religious exercise, as such would render meaningless the word "substantial." *See Civil Liberties for Urban Believers*, 342 F.3d at 761.

Thus, under the First Amendment or RLUIPA, Plaintiff must allege that his religious exercise has been substantially burdened.

### 1. Free Exercise Clause

Plaintiff contends that his religious exercise was substantially burdened because he was forced to choose between religious adherence and an adequate diet. Specifically, Plaintiff contends that the food designated for the religious diet was prepared in such a way that the food was contaminated and could not be eaten without violating the tenets of his faith. Accepting as true Plaintiff's allegations, he was forced to choose between either abandoning his religious diet practices or having less than adequate nutrition. Requiring Plaintiff to make such a choice appears

to be precisely the type of pressure that substantially burdens the free exercise of Plaintiff's religious practice.

Moreover, Plaintiff has adequately alleged that Defendants Howard, Lebo, and Ward participated in imposing that burden. In Plaintiff's amended complaint, he alleges that on April 8, 2020, Defendant Lebo instructed Plaintiff "to cook and prepare vegan/religious meals outside established and designated area[s]." (Am. Comp., ECF No. 6, PageID.69.) Plaintiff advised Defendant Howard of the risk of cross-contamination, and Defendant Howard "acknowledged the risk" and told Plaintiff she would raise the concerns to Defendant Lebo. (*Id.*) Subsequently, Defendant Lebo told Plaintiff "It's only 8 days, deal with it!" (*Id.*) Defendant Howard stated, "It has never been done like this and shouldn't be, why now!" (*Id.*) Defendant Lebo replied, "Because I'm the boss that's why!" (*Id.*) On March 26, 2021, through April 5, 2021, "vegan/religious meals were prepared outside the well-established designated area for a consecutive year." (*Id.*) Plaintiff claims that Defendant Howard "ordered that religious materials be cleaned with materials that ha[d] been strictly established to be prohibited under any circumstances." (*Id.*, PageID.71) Further, Plaintiff's allegations support the inference that Defendant Ward was involved in the alleged cross-contamination of the "vegan/religious meals." (*See id.*, PageID.70.) Additionally, Plaintiff states that for the entire duration of his incarceration at DRF, he believes that the DRF religious meals "were never able to survive nor sustain the practices and procedures related to religious tenets." (*Id.*, PageID.71.)

Although Plaintiff has by no means proven his claims, at this stage of the proceedings, taking Plaintiff's allegations as true and in the light most favorable to him, the Court concludes that Plaintiff's First Amendment free exercise claims against Defendants Lebo, Ward, and Howard may not be dismissed on initial review.

2.     **RLUIPA**

RLUIPA does not create a cause of action against an individual in that individual's personal capacity. *Sossamon v. Lone Star State of Texas*, 560 F.3d 316, 331 (5th Cir. 2009), *aff'd Sossamon v. Texas*, 563 U.S. 277 (2011);[5] *see also Grayson v. Schuler*, 666 F.3d 450, 451 (7th Cir. 2012) ("[RLUIPA] does not create a cause of action against state employees in their personal capacity."); *Washington v. Gonyea*, 731 F.3d 143, 145 (2d Cir. 2013) ("RLUIPA does not provide a cause of action against state officials in their individual capacities . . . .").[6]

Moreover, RLUIPA does not permit damages claims against prison officials in their official capacities. A suit against an individual in his or her official capacity is equivalent to a suit brought against the governmental entity. *See Will*, 491 at 71; *Matthews*, 35 F.3d at 1049. In *Sossamon v. Texas*, 563 U.S. 277 (2011), the Supreme Court held that the RLUIPA did not abrogate sovereign immunity under the Eleventh Amendment. *See also Cardinal v. Metrish*, 564 F.3d 794, 801 (6th Cir. 2009) ("[T]he Eleventh Amendment bars plaintiff's claim for monetary relief under RLUIPA."). Therefore, although the statute permits the recovery of "appropriate relief against a government," 42 U.S.C. § 2000cc-2(a), monetary damages are not available under RLUIPA.

---

[5] The United States Supreme Court granted certiorari only on the question of "[w]hether an individual may sue a State or state official in his official capacity for damages for violation of" RLUIPA. *Sossamon v. Texas*, 560 U.S. 923 (2010). Thus, the Supreme Court left undisturbed and unreviewed the Fifth Circuit's holding that "RLUIPA does not create a cause of action against defendants in their individual capacities." *Sossamon*, 560 F.3d at 331.

[6] In *Haight v. Thompson*, 763 F.3d 554 (6th Cir. 2014), the Sixth Circuit analyzed whether Congress's spending power permitted a RLUIPA damages claim against an individual prison official in the official's personal capacity. The court rested its determination that such claims were not permitted on its conclusion that "appropriate relief" under RLUIPA was not a sufficiently clear statement to authorize such a damages claim. *Id*. at 567–69. The Sixth Circuit stopped short of adopting the reasoning that swayed the Fifth Circuit in *Sossamon* and subsequent federal circuit court panels. *Haight*, however, did not squarely present the issue whether a personal capacity suit for injunctive or declaratory relief might be available.

That leaves only a claim for declaratory or injunctive relief against Defendants Lebo, Ward, and Howard in their official capacities. That type of claim is not barred by sovereign immunity. *See Ex Parte Young,* 209 U.S. at 159–60. However, as discussed above, *see supra* Part II.B, the *Ex Parte Young* exception for declaratory and injunctive relief applies only to prospective relief. *Green v. Mansour*, 474 U.S. 64, 68–73 (1985); *S&M Brands, Inc. v. Cooper*, 527 F.3d 500, 507–08 (6th Cir. 2008); *see also Kanuszewski v. Mich. Dep't of Health & Hum. Servs*., 927 F.3d 396, 406 (6th Cir. 2019) (holding that in the absence of a real and immediate threat that the action will occur in the future, a plaintiff is not entitled to declaratory relief). Because Plaintiff raises no continuing violation of federal law, no basis exists for granting either injunctive or declaratory relief. Therefore, Plaintiff's RLUIPA claims against Defendants must be dismissed.

## Conclusion

Having conducted the review required by the Prison Litigation Reform Act, the Court determines that Defendants Clark and Dine will be dismissed for failure to state a claim under 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). The Court will also dismiss, for failure to state a claim, the following claims against remaining Defendants Lebo, Ward, and Howard: Plaintiff's official capacity claims, Eighth Amendment claims, and RLUIPA claims. Further, Plaintiff's First Amendment retaliation claim against Defendant Ward premised on Defendant Ward's "constant threats" will be dismissed. Plaintiff's First Amendment free exercise claims against Defendants Lebo, Ward, and Howard remain in the case. Additionally, Plaintiff's First Amendment retaliation claims against Defendant Ward premised on (i) the issuance of a

misconduct report for cooking chicken and (ii) the loss of his prison work assignment remain in the case.

      An order consistent with this opinion will be entered.


Dated:    November 14, 2022                  /s/ Ray Kent                   
                                                Ray Kent
                                                United States Magistrate Judge